KAREN L. LOEFFLER
United States Attorney

STEPHANIE C. COURTER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: 907-271-5071
Fax: 907-271-1500
Email: Stephanie.Courter@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:13-cr-00017-01-SLG-JDR |
| | ) | |
| Plaintiff, | ) | **PLEA AGREEMENT** |
| | ) | |
| vs. | ) | |
| | ) | |
| JASON GERALD WOODS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I. TERMS OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11, WAIVER OF CLAIM FOR ATTORNEY'S FEES AND COSTS

### A. Terms of Agreement

The defendant agrees to plead guilty to Counts 1 and 15 of the Indictment. In exchange for this, and subject to the conditions more fully described herein, the United States agrees to move to dismiss Counts 5-12, 14, and 16 of the Indictment at the time that the defendant is sentenced in this case. The United States further agrees not to prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Indictment, as set forth in Section V below.

The parties agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the defendant will be sentenced to 180-month period of incarceration.

The defendant will waive all rights to appeal the conviction and sentence imposed under this agreement and will waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea.

//

### B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (C) will control this plea agreement. Thus, the defendant may withdraw from this agreement or the guilty plea only if the Court rejects this agreement, or if the United States breaches the agreement. The United States may likewise withdraw from this agreement only if the Court rejects the agreement or if the defendant breaches the agreement.

### C. Waiver of Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE, FORFEITURE

### A. Charges

The defendant agrees to plead guilty to Counts 1 and 15 of the Indictment charging him with 1) Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR          Page 3 of 25

(b)(1)(B); and 2) Using or Carrying a Firearm During and in Relation to the Commission of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

## B.    Elements

The elements of the charges to which the defendant is pleading guilty are as follows:

<u>Conspiracy to Distribute Methamphetamine</u>

1) First, beginning on or about April 26, 2012 and ending on or about October 3, 2012, there was an agreement between two or more persons to distribute methamphetamine;

2) Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and

3) Third, the conspiracy involved the distribution of more than 5 grams of actual methamphetamine, a controlled substance, which was actually known by or reasonably foreseeable to the defendant.

//

//

"To distribute" means to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in that transaction.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is also not necessary, in cases involving conspiracies charged pursuant to 21 U.S.C. § 846, for the United States to prove commission of overt acts in furtherance of the conspiracy. Ninth Cir. Model Crim. Instr. 9.19

## Using or Carrying a Firearm During and in Relation to Drug Trafficking Crime

1) First, the defendant committed a drug trafficking crime, namely the crime of Conspiracy to Distribute Methamphetamine as charged in Count 1 of the Indictment; and

2) Second, the defendant knowingly used or carried the specified firearm – here, a Kel-Tec 9mm pistol – during and in relation to that drug trafficking crime.

//

Case 3:13-cr-00017-SLG   Document 86   Filed 08/20/13   Page 5 of 25

A defendant "used" a firearm if he actively employed the firearm during and in relation to the crime of conspiracy to distribute Methamphetamine.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed, or transported it in some manner on his person or in a vehicle.

A defendant used or carried a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime. Ninth Cir. Model Crim. Instr. 8.71.

### C. Factual Basis

The defendant admits the truth of the allegations in Counts 1 and 15 of the Indictment and the truth of the following statement. The parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea and the imposition of the sentence:

1.  Beginning on or about April 26, 2012 and continuing until on or about October 3, 2012, defendant WOODS agreed with defendants SENGCHAREUN and MILLER to distribute

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR         Page 6 of 25

methamphetamine. During the course of the agreement, defendant WOODS and his co-conspirators distributed more than 40 grams of actual methamphetamine. The distribution of this amount of methamphetamine was foreseeable to defendant WOODS.

2. Specifically, during the course of the agreement, the following transactions occurred:

a. On or about April 27, 2012, within the District of Alaska, defendant WOODS sold 2.6 grams of actual methamphetamine to an undercover law enforcement officer for approximately $500. Defendant WOODS obtained the methamphetamine from co-defendant SENGCHAREUN.

b. On or about June 28, 2012, defendant WOODS sold 13.8 grams of actual methamphetamine to an undercover law enforcement officer. The sale took place at defendant WOODS's apartment building in Anchorage. While defendant WOODS and the undercover officer were at the residence, co-defendant SENGCHAREUN arrived with a bag containing methamphetamine. After co-defendant SENGCHAREUN confirmed the price of the drugs

Case 3:13-cr-00017-SLG Document 86 Filed 08/20/13 Page 7 of 25

with defendant WOODS, the officer then paid co-defendant SENGCHAREUN $2,000 in exchange for the methamphetamine. Co-defendant MILLER was the source of the methamphetamine sold to the officer on June 28, 2012.

        c.      On or about July 5, 2012, defendant WOODS sold 20.6 grams of actual methamphetamine to an undercover law enforcement officer in exchange for $3,800. Co-defendant MILLER was the source of the methamphetamine sold to the officer on July 5, 2012.

        d.      On or about October 3, 2012, defendant WOODS arranged with an undercover officer to trade methamphetamine for fully automatic machine guns. Defendant WOODS arrived at the agreed upon location and attempted to sell 6.2 grams of actual methamphetamine to the officer. Before the trade could be consummated, however, officers of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) took defendant WOODS into custody. Defendant SENGCHAREUN was the source of the methamphetamine that co-defendant WOODS brought to the deal.

//

3.      During the October 3, 2012 sale of methamphetamine, defendant WOODS had a loaded Kel-Tec 9mm pistol concealed in his waistband.  The purpose of the firearm was to protect defendant WOODS's drug trafficking activities.  Specifically, the firearm was present and available for protection of the defendant, his controlled substances, and proceeds from the sale of controlled substances.

4.      In addition to the methamphetamine distributed as part of the conspiracy, the defendant sold additional quantities of illegal narcotics.  Specifically:

a.      On or about May 10, 2012, defendant WOODS sold 13.7 grams of actual methamphetamine to an undercover law enforcement officer.

b.      On or about May 31, 2012, defendant WOODS sold 13.9 grams of actual methamphetamine to an undercover law enforcement officer.

c.      On or about July 30, 2012, defendant WOODS sold 25.8 grams of actual methamphetamine to an undercover law enforcement officer.

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR          Page 9 of 25

d.      On or about August 2, 2012, defendant WOODS
sold 25.6 grams of actual methamphetamine to an undercover law
enforcement officer.

e.      On or about August 23, 2012, defendant WOODS
sold 27.2 grams of actual methamphetamine to an undercover law
enforcement officer.

f.      On or about September 6, 2012, defendant
WOODS sold 39.8 grams of actual methamphetamine to an undercover
law enforcement officer.

5.      During the August 23, 2012 sale of methamphetamine,
defendant WOODS had a loaded Kel-Tec 9mm pistol concealed in his
waistband. WOODS showed the firearm to the undercover law
enforcement officer during the sale of the methamphetamine. The
purpose of the firearm was to protect defendant WOODS's drug
trafficking activities. Specifically, the firearms were present and
available for protection of the defendant, his controlled substances, and
proceeds from the sale of controlled substances.

//

6.      Altogether, between on or about April 26, 2012 and October 3, 2012, defendant WOODS distributed 189.2 grams of actual methamphetamine.

### D.      Statutory Penalties and Other Matters Affecting Sentence

#### 1.      Statutory Penalties

The statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea, are as follows:

Conspiracy to Distribute Methamphetamine

1)      A mandatory minimum sentence of five years in prison, with a maximum sentence of up to 40 years in prison;

2)      A fine of not more than $5 million;

3)      Four years to life of supervised release; and

4)      A $100 mandatory special assessment.

//

//

//

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR          Page 11 of 25

<u>Using or Carrying a Firearm During and in Relation to Drug</u>

<u>Trafficking Crime</u>

1)      A consecutive mandatory minimum sentence of five years in prison, with a maximum sentence of up to life imprisonment;

2)      A fine of not more than $250,000;

3)      Five years of supervised release; and

4)      A $100 mandatory special assessment.

2.      **Other Matters Affecting Sentence**

     a.      **Conditions Affecting the Defendant's Sentence**

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR          Page 12 of 25

already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1.

### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check, or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the

//

//

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR        Page 13 of 25

United States following conviction for a criminal offense and will not be permitted to return unless the defendant specifically receives the prior approval of the United States Attorney General.

### E.   Forfeiture

Under this agreement, the defendant agrees to forfeit his interest in the following firearm:   one Kel-Tec, Model: P-11, Caliber 9mm Luger bearing serial number AWB51.

### F.   Restitution

The parties have no agreement as to restitution.

## III.   ADVISORY UNITED STATES SENTENCING GUIDELINES; GUIDELINE APPLICATION AGREEMENTS; SENTENCING AGREEMENT

### A.   Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose.  The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty.  The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence

Case 3:13-cr-00017-SLG   Document 86   Filed 08/20/13   Page 14 of 25

recommended by the U.S.S.G. The information upon which the Court determines the defendant's Guidelines sentence is not limited to those facts admitted as part of this plea agreement. In accordance with Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree to recommend that the defendant receive a sentence of 180 months in prison.

## B. Guideline Application Agreements

The parties have no agreements on any Guideline applications unless set forth below in this section.

### 1. Acceptance of Responsibility

Subject to the defendant satisfying the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for an additional one-level adjustment based upon the defendant's timely notification of his intent to enter a plea of guilty to the charges outlined herein. If, at any time prior to imposition of the sentence, the defendant fails to fully satisfy the criteria set out in

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR          Page 15 of 25

U.S.S.G. § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

## 2. Specific Offense Characteristic: Possession of a Firearm (U.S.S.G. 2D1.1(b)(1))

In calculating the applicable Guideline range, the defendant admits and acknowledges that, pursuant to U.S.S.G. 2D1.1(b)(1), an additional two level enhancement applies. This enhancement is based upon the defendant's possession of a loaded Kel-Tec 9mm pistol during the narcotics transaction that occurred on or about August 23, 2012. The United States agrees that this enhancement does not apply based upon the defendant's possession of a firearm on or about October 3, 2012, as the defendant's possession on that date separately forms the basis of Count 15, to which the defendant is pleading guilty.

### C. Agreed Sentence of Imprisonment

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that a sentence of 180 months of incarceration is appropriate.

//

## IV.  WAIVER OF TRIAL, APPELLATE RIGHTS, AND COLLATERAL ATTACK RIGHTS

### A.  Trial Rights

Being aware of the following, the defendant waives these trial rights:

-- If pleading to an information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

-- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

-- The right to object to the composition of the grand or trial jury;

-- The right to plead not guilty or to persist in that plea if it has already been made;

-- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

Case 3:13-cr-00017-SLG   Document 86   Filed 08/20/13   Page 17 of 25

--      The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

--      The right to confront and cross examine witnesses against the defendant and the right to subpoena witnesses to appear on the defendant's behalf;

--      The right to remain silent at trial, with such silence not to be used against the defendant and the right to testify on the defendant's own behalf; and

--      The right to contest the validity of any searches conducted on the defendant's property or person.

## B.    Appellate Rights

The defendant waives the right to appeal the conviction resulting from the entry of a guilty plea to the charge set forth in this agreement. The defendant further agrees that if the Court imposes a sentence contemplated by this plea agreement, the defendant waives without

U.S. v. Woods, et al.
3:13-cr-00017-SLG-JDR              Page 18 of 25

exception the right to appeal the sentence the Court imposes, on all grounds contained in 18 U.S.C. § 3742, including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution.

## C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes.  The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction and/or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea.

## V.    ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the

United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charge brought in the indictment in this case and the defendant's admissions set forth in Section II C.  Provided, however, if the defendant's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if the defendant's conviction or sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case, including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated, as well as for perjury and false statements.  Finally, as stated herein, the United States agrees to move to dismiss Counts 5-12, 14, and 16 of the Indictment the time that the defendant is sentenced in this case.

## VI.   ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2 (d)(9), this plea agreement is appropriate in that it conforms with the sentencing goals that would

//

otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, JASON GERALD WOODS, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, I and the United States will jointly inform the Court in writing before I enter my guilty plea. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations

will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea. I enter into this agreement knowingly and voluntarily. I understand that

anything that I discuss with my attorney is privileged and confidential and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charge to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

//

//

//

//

//

Based on my complete understanding of this plea agreement, I therefore wish to enter pleas of guilty to Counts 1 and 15 of the Indictment.

DATED: _8/20/13_                              _____
                                             JASON GERALD WOODS
                                             Defendant


As counsel for the defendant, I have conveyed all formal plea offers to the defendant. I have discussed the terms of this plea agreement with the defendant and have fully explained the charges to which the defendant is pleading guilty and the necessary elements, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competency to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court. I have conveyed to my client all formal offers of settlement from the United States.

DATED: _8/20/13_                              _____
                                             JAMIE MCGRADY
                                             Attorney for Jason Gerald Woods

//

//

Case 3:13-cr-00017-SLG   Document 86   Filed 08/20/13   Page 24 of 25

On behalf of the United States, the following accept JASON

GERALD WOODS's offer to plead guilty under the terms of this plea

agreement.

DATED: 8/20/2013

STEPHANIE C. COURTER
Assistant U.S. Attorney
United States of America

DATED: 8/20/13

KAREN L. LOEFFLER
United States Attorney
United States of America